UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL R. WILDISH; and DEBRA S. WILDISH,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA; JANET YELLEN, in her capacity as Secretary of the Treasury,<br><br>    Defendants. | Case No. 2:22-cv-00203-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are (1) the United States' Motion to Compel and for Sanctions and (2) the United States' Motion to Confirm Stay of Dispositive Motion Deadline in Light of Pending Discovery Motion. (Dkts. 28, 29). Both motions stem from a discovery dispute between the parties. For the reasons set forth below, the Court grants both motions.

## I.  BACKGROUND

This case concerns an income tax dispute. In 2021, the United States Secretary of State issued a hold on the passports of Plaintiffs Daniel and Debra Wildish after the Internal Revenue Service certified the Wildishes owed a delinquent tax liability from their 2009 federal income tax filing. (Dkt. 1). The Wildishes initiated this lawsuit pro se, seeking to invalidate the IRS's delinquent tax certification. (Dkt. 1). The United States answered and counterclaimed for a monetary judgment against the Wildishes for their unpaid 2009 income tax liability. (Dkt. 10). The Wildishes have since voluntarily dismissed their complaint by stipulation, leaving the United States' counterclaim as the only remaining claim in this lawsuit. (Dkt. 26).

**MEMORANDUM DECISION AND ORDER - 1**

The parties' main dispute is whether the ten-year statute of limitations governing the collection of unpaid taxes has expired. *See* 26 U.S.C. § 6502(a). The Wildishes' position is that the IRS is barred from recovering their unpaid 2009 taxes because more than ten years elapsed between the filing of their 2009 income tax return and the United States' counterclaim. (Dkt. 1). Conversely, the United States' position is that the statute of limitations did not expire because proposals between the Wildishes and the IRS regarding installment payment agreements tolled the limitation period. *See* 26 C.F.R. § 301.6331-4(c) ("The statute of limitations under section 6502 . . . shall be suspended during the period that a proposed installment agreement relating to that liability is pending with the IRS[.]").

The Wildishes maintain that they never proposed or entered into installment payment agreements with the IRS and that the statute of limitations was not tolled beyond the ten-year period. The United States has attempted to discover what facts the Wildishes possess to support this contention, resulting in the instant discovery dispute between the parties. First, the United States served interrogatories on the Wildishes requesting any facts they possessed to support their claim they never proposed or entered into installment payment agreements. (Dkt. 28-4, Ex. D ¶¶ 3-5). The Wildishes responded that the alleged installment payment proposals "did not occur" and disputed the veracity of the IRS's own records on the matter. (*Id.*).

Second, the United States sent requests for production to the Wildishes, seeking any documents which demonstrate an attempt to negotiate the Wildishes' 2009 tax liability. (Dkt. 28-5, Ex. E ¶¶ 3-4). While the Wildishes produced some documents, they withheld others, claiming they were privileged as attorney-client communications. (*Id.*). The United States also subpoenaed the Wildishes' former CPA, Russell Shuirman, for related communications with the IRS, but the

**MEMORANDUM DECISION AND ORDER - 2**

Wildishes instructed him not to respond on the basis that any information was covered by the attorney-client privilege. (Dkt. 28-6, Ex. F at 92:5-93:13).

Lastly, the United States individually deposed both Daniel and Debra Wildish. During Mrs. Wildish's deposition, Mr. Wildish stated he was representing Mrs. Wildish, despite Mrs. Wildish appearing pro se and Mr. Wildish not being licensed to practice law in Idaho. (Dkt. 28-2, Ex. B at 8:11). Mr. Wildish then objected to several of the United States' questions and instructed Mrs. Wildish not to answer on more than one occasion. (*Id.* at 13:18-20, 14:10-12). Later, during his own deposition, Mr. Wildish argued with counsel for the United States. (Dkt. 28-3, Ex. C at 50:15-56:2). Mr. Wildish eventually moved to terminate his deposition in order "to allow [him] time to make a motion." (*Id.* at 56:3-9). The United States opposed ending the deposition and implored Mr. Wildish to stay, but he left the deposition, stating "[t]hat's the end of this deposition." (*Id.* at 57:17-18).

The United States has since filed its Motion to Compel Discovery and for Sanctions, based on the Wildishes' discovery responses and their conduct during their depositions. (Dkt. 28). The United States has also filed an accompanying motion to stay the dispositive motion deadline pending the resolution of its motion to compel. (Dkt. 29). The Wildishes oppose both motions.

## II. LEGAL STANDARD

Parties may obtain discovery as to any nonprivileged matter that is relevant to any party's claim and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). A party seeking discovery may generally move for an order compelling production if an opposing party has failed to answer an interrogatory, participate in a deposition, or produce requested documents. *See* Fed. R. Civ. P. 37(a)(3). The party seeking to compel discovery bears the initial burden of showing the request is relevant and proportional. *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal.

**MEMORANDUM DECISION AND ORDER - 3**

1995). If the moving party establishes the information sought is discoverable, "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

If the motion to compel is granted, "the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion" to pay the movant's attorney fees and costs unless the court finds any of the following: (1) The movant did not attempt to obtain the disclosure in good faith without court action prior to filing its motion, (2) the opposing party's nondisclosure was substantially justified, or (3) other circumstances make an award unjust. *See* Fed. R. Civ. P. 37(a)(5) (emphasis added).

### III.  ANALYSIS

#### A.  Motion to Compel and for Sanctions

In its Motion to Compel and for Sanctions, the United States argues the Wildishes have inadequately responded to interrogatories, withheld nonprivileged documents, and interfered with the United States' attempts to depose them. For these reasons, the United States requests that the Court issue an order compelling the Wildishes to comply with discovery and imposing sanctions against the Wildishes for the costs of this motion. Specifically, the United States outlines five kinds of relief it requests from the Court.

In response, the Wildishes argue the Court should deny the United States' motion because the requested relief is unnecessary or "not found in the federal discovery statute."[1] The Wildishes also suggest the United States' motion does not comply with the Court's local rules. Significantly, however, the Wildishes make no attempt to defend their discovery responses or their conduct

---

[1]     The Wildishes do not cite to any specific statute in their response brief, and the Court is unaware of any general "federal discovery statute."

**MEMORANDUM DECISION AND ORDER - 4**

during their depositions. Nor do the Wildishes dispute that the information the United States seeks is relevant and proportional to the needs of the case. Because the Wildishes do not dispute that the information at issue is discoverable, but rather only that the requested relief is appropriate, the Court considers the United States' requested relief.

### 1. Interrogatories

The United States requests that the Court order the Wildishes to review their interrogatory responses and clarify whether they intend to offer any evidence during trial. The United States specifically argues the Wildishes' current responses to Interrogatories 3, 4, and 5 are inadequate. The United States also requests that Mr. and Mrs. Wildish prepare their clarifications to their interrogatory responses separately based on concerns that Mrs. Wildish did not review or initially sign her interrogatory responses.

A party may move to compel discovery when a responding party has failed to answer an interrogatory. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii). A party fails to answer an interrogatory when they provide an evasive or incomplete response. *See* Fed. R. Civ. P. 37(a)(4). Here, Interrogatories 3, 4, and 5 each ask the Wildishes to state the facts supporting their conclusion that they did not propose entering installment payment agreements on specified dates. For example, Interrogatory 3 asks: "To the extent you contend you did not proposed [sic] entering an installment agreement on or around January 29, 2011, please state the principal facts supporting your contention. . . ." Interrogatories 4 and 5 are identical but refer to November 20, 2012, and January 5, 2021, respectively.

In response to Interrogatory 3, the Wildishes responded:

> Plaintiffs' contention is based on the convoluted, cryptic, vague and ambiguous nature of the IRS' own documents produced in this action which prevent determining whether or not the ten-year limitations period was stayed at any time (and, if so, when and for how long). For example, IRS records (at WIL-USA-

**MEMORANDUM DECISION AND ORDER - 5**

000002-3) state, for January 19, 2011, that there is both an installment agreement pending and an installment agreement no longer pending (with no independent records to confirm either one of these statements). Plaintiffs cannot be expected to decipher these records and it is very likely that, especially due to the passage of time, anyone else can either.

In response to Interrogatory 4, the Wildishes responded:

This did not occur. IRS records state that a "request for installment agreement [was] pending" but there is no indication who made the request or when it was actually made since there are no independent records to confirm this. Again, the IRS' own records produced in this action are too convoluted, cryptic, vague and ambiguous prevent determining whether or not the ten-year limitations period was stayed at any time (and, if so, when and for how long). Plaintiffs cannot be expected to decipher these records and it is very likely that, especially due to the passage of time, anyone else can either.

In response to Interrogatory 5, the Wildishes responded:

This did not occur. Also, Plaintiffs' contention is based on the convoluted, cryptic, vague and ambiguous nature of the IRS' own documents produced in this action which prevent determining whether or not the ten-year limitations period was stayed at any time (and, if so, when and for how long). For example, IRS records (at WIL-USA-000006) state, for January 5, 2021, that there is both an installment agreement pending and an installment agreement no longer pending (with no independent records to confirm either one of these statements). Plaintiffs cannot be expected to decipher these records and it is very likely that, especially due to the passage of time, anyone else can either.

The Court concludes the Wildishes' three responses are inadequate. The Wildishes' responses are incomplete and evasive because they do not answer the call of the question presented in each interrogatory. Interrogatories 3, 4, and 5 each ask the Wildishes to provide *facts*, but the bulk of each answer only provides the Wildishes' opinion that the IRS's records are unreliable. The Wildishes' characterization of the IRS's records, however, is not a fact. While the statement "this did not occur" may appear to state a fact, these answers are conclusory and do not reveal the factual basis for the Wildishes' belief. For example, if the Wildishes think a particular proposal for an installment payment agreement "did not occur" because they have no memory of the event, they should state as much. Or if the Wildishes have other facts to support their belief that a

**MEMORANDUM DECISION AND ORDER - 6**

particular proposal did not occur, they should disclose that as well. Simply saying "this did not occur" is not a sufficient answer by itself.

For these reasons, the Court grants the United States' request regarding the Wildishes' interrogatory responses. Mr. and Mrs. Wildish are each ordered to clarify their answers to Interrogatories 3, 4, and 5 within thirty days of this order and resubmit separate answers to the United States. Any facts they intend to introduce at trial related to these interrogatories must be disclosed. The answers must be made under oath and signed by Mr. or Mrs. Wildish, respectively. *See* Fed. R. Civ. P. 33(b).

### 2. Requests for Production

The United States next requests that the Wildishes consent to Mr. Shuirman reviewing his records and providing a written description of any responsive documents. The United States also requests that the Wildishes produce a privilege log for any document they claim is privileged.

The Court grants the United States' request. A party may request that another party produce documents within the scope of Rule 26(b) if the documents are in the "responding party's possession, custody, or control." *See* Fed. R. Civ. P. 34(a)(1). The responding party need not have actual possession; rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." *Soto*, 162 F.R.D. at 619. If the responding party withholds the requested document based on a claim that the document is privileged, the responding party must "describe the nature of the document[]" to the requesting party. *See* Fed. R. Civ. P. 26(b)(5). Thus, "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege." *Burlington N. & Santa Fe Ry. v. U.S.Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Instead, under the default guidelines of the

Ninth Circuit, a responding party asserting that a document is privileged must generally produce a privilege log within the thirty-day disclosure period. *Id.*

Here, the United States requested that the Wildishes produce "all documents in your possession, custody, or control concerning any attempt to dispute, negotiate, compromise, or satisfy your 2009 or 2010 federal income tax liabilities, including but not limited to any proposed or implemented installment agreement or offer in compromise." (Dkt. 28-5, Ex. E ¶ 3). The United States also subpoenaed Mr. Shuirman to produce these documents, but Mr. Shuirman has refused to produce any documents because the Wildishes purportedly informed him the information was privileged as attorney-client communications.[2]

Notably, the Wildishes no longer appear to argue that any information they are withholding is privileged. In opposing the United States' request for a privilege log, the Wildishes contend a privilege log is unnecessary because they have produced the sole document they initially claimed was privileged. (Dkt. 30, at 2). If that is the case, there are no other disputed documents the Wildishes claim are privileged. Therefore, there is no longer any basis for the Wildishes not to consent to allowing Mr. Shuirman to produce the documents the United States requested. Indeed, although the Wildishes may not be in actual possession of the documents Mr. Shuirman possesses, they ultimately *control* those documents and their disclosure.

Accordingly, the Court will grant the United States' request for the documents in Mr. Shuirman's possession. The Wildishes are required to provide their consent, in writing, and copying counsel for the United States, for Mr. Shuirman to produce any requested, discoverable

---

[2] There is no accountant-client privilege under federal law. *See Couch v. United States*, 409 U.S. 322, 335 (1973). Although not clear, it appears the Wildishes originally represented to the United States that any communications or documents held by Mr. Shuirman were covered by the attorney-client privilege because he was employed as a CPA at a law firm. The Court need not address whether any privilege applies, however, because the Wildishes no longer appear to argue the disputed documents are privileged.

**MEMORANDUM DECISION AND ORDER - 8**

documents. The Wildishes must provide their consent to Mr. Shuirman within fourteen days of this order. If the Wildishes claim that any of the information the United States seeks is privileged, they must produce a privilege log within thirty days.

### 3. Depositions

The United States next requests that the Court allow, if it so chooses, to continue Mr. Wildish's deposition. The United States also requests the Wildishes cover the costs associated with the continued deposition.

The Court grants this request also. A party may only move to terminate or limit a deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). The deposition may be suspended for the time necessary to make a motion and for the court to issue an order. *Id.* Here, Mr. Wildish abandoned his deposition, claiming he needed time to make a motion. To date, however, Mr. Wildish has made no motion to terminate or limit his deposition. Moreover, the Wildishes have made no attempt to explain why they abandoned the deposition. While the transcript suggests Mr. Wildish left his deposition because he wanted to resolve a factual dispute before answering additional questions, the Court can only speculate about Mr. Wildish's reason because the Wildishes have not addressed the issue in their response brief. In any event, Mr. Wildish terminated his deposition without complying with Rule 30(d)(3)(A), and therefore he wrongfully abandoned his deposition.

For these reasons, the Court will permit the United States to continue its deposition of Mr. Wildish if it so chooses. If the United States does continue the deposition, the Wildishes are required to pay the reasonable expenses incurred by the United States in doing so, after the United States has submitted a memorandum of costs to the Court and the Wildishes have had an

**MEMORANDUM DECISION AND ORDER - 9**

opportunity to respond. *See* Fed. R. Civ. P. 30(d)(2). The length of the continued deposition will be the time allowed under Federal Rule of Civil Procedure 30, less the time of Mr. Wildish's original deposition.

Finally, the Court addresses Mr. Wildish's conduct during Mrs. Wildish's deposition. Mr. Wildish is not representing Mrs. Wildish in this lawsuit—nor could he, because he is not licensed to practice law in Idaho. Therefore, it was inappropriate for him to claim to represent Mrs. Wildish during her deposition, object to questions, and instruct Mrs. Wildish not to answer. So long as Mrs. Wildish appears pro se in this lawsuit, Mr. Wildish is not allowed to represent her.

### 4. Sanctions

The United States requests the Court impose sanctions against the Wildishes for the costs of bringing this motion to compel. Because the Court has granted the United States' motion to compel in full, the Court is required to impose sanctions for the reasonable costs in making the motion, unless the (1) the United States did not attempt to obtain the disclosure in good faith without court action prior to filing its motion, (2) the Wildishes' nondisclosure was substantially justified, or (3) other circumstances make an award unjust. *See* Fed. R. Civ. P. 37(a)(5)(A). The Court finds none of these exceptions apply. Accordingly, the Court grants the United States' motion for sanctions. The United States shall submit a memorandum of costs for the reasonable expenses, including attorney fees, in bringing their motion to compel within fourteen days of this order. The Court will then provide the Wildishes an opportunity to be heard by allowing the Wildishes to object to the United States' proposed award of costs within fourteen days. *See id.*

    **B.**    **Motion to Stay the Dispositive Motion Deadline**

The United States also moves to stay or extend the dispositive motion deadline pending the resolution of its Motion to Compel and for Sanctions. As both parties have noted, the Court will generally not extend a dispositive motion deadline, even for a discovery dispute, unless good cause exists. *See* Fed. R. Civ. P. 6(b)(1)(A); Dist. Loc. R. Civ. 6.1(a); (Dkt. 16). Here, the Court finds that good cause exists to extend the dispositive motion deadline. As explained, the Wildishes have withheld discoverable information pertinent to determining the main issue in this case, i.e., whether the statute of limitations has expired. As a result, the United States was unable to file a dispositive motion until after the Court resolved the discovery dispute. Accordingly, the Court grants the United States' motion to extend the dispositive motion deadline in this case. The new deadline to file dispositive motions will be sixty days from the issuance of this order.

## IV.  ORDER

**IT IS ORDERED that:**

1. The United States' Motion to Compel and for Sanctions (Dkt. 28) is **GRANTED**.
    a. Mr. and Mrs. Wildish are each ordered to clarify their answers to Interrogatories 3, 4, and 5 within thirty days of this order and resubmit separate answers to the United States. The answers must be made under oath and signed by Mr. or Mrs. Wildish, respectively.
    b. The Wildishes are required to provide their consent, in writing, and copying counsel for the United States, for Mr. Shuirman to produce any requested, discoverable documents. The Wildishes must provide their consent to Mr. Shuirman within fourteen days of this order. If the Wildishes claim that any of the information sought by the United States is privileged, they must produce a privilege log within thirty days.
    c. The Court grants the United States leave to continue its deposition of Mr. Wildish if it so chooses. If the United States does continue the deposition, the Wildishes are required to pay the reasonable expenses incurred by the United States in doing

**MEMORANDUM DECISION AND ORDER - 11**

      so, after the United States has submitted a memorandum of costs to the Court and the Wildishes have had an opportunity to respond. *See* Fed. R. Civ. P. 30(d)(2). The length of the continued deposition will be the time allowed under Federal Rule of Civil Procedure 30, less the time of Mr. Wildish's original deposition.

    d. The Court grants the United States' motion for sanctions. The United States shall submit a memorandum of costs for the reasonable expenses, including attorney fees, incurred in making their motion to compel within fourteen days of this order. The Wildishes may object to the United States' proposed award of costs within fourteen days of the filing of the United States' memorandum of costs.

2. The United States' Motion to Confirm Stay of Dispositive Motion Deadline in Light of Pending Discovery Motion (Dkt. 29) is **GRANTED**. The new dispositive motion deadline is extended to sixty days from the issuance of this order.

DATED: January 08, 2024

Amanda K. Brailsford
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 12